■ ROBERT RANKEL et al., Appellants, v COUNTY OF WESTCHESTER et al., Respondents, et al., Defendant. [24 NYS3d 131]—

In an action to recover damages for civil rights violations pursuant to 42 USC § 1983, the plaintiffs appeal, as limited by their notice of appeal and brief, from so much of an order of the Supreme Court, Westchester County (Colabella, J.H.O.), dated March 5, 2014, as granted that branch of the defendants' motion which was for leave to amend their answer to assert an affirmative defense of qualified immunity and denied that branch of their cross motion which was for summary judgment on the issue of liability.

Ordered that the order is affirmed insofar as appealed from, with costs.

This action arises out of the emergency removal of the plaintiffs' three children by the Westchester County Department of Social Services (hereinafter DSS) in early February 2001. Within days of the emergency removal, (1) DSS commenced abuse and neglect proceedings against the plaintiffs with respect to the three children; and (2) the Family Court held a hearing, pursuant to Family Court Act § 1028, and did not return the children to the parents, instead remanding the children to the custody of DSS. On February 28, 2001, DSS withdrew the abuse and neglect petitions without prejudice, the children were returned to the care of the plaintiffs, and the DSS case was determined to be unfounded and closed.

The plaintiffs, individually and on behalf of the children, commenced this action pursuant to 42 USC § 1983, alleging, inter alia, that the emergency removal of the children without court authorization, and the four-to-five-day period after the removals wherein DSS did not initiate postdeprivation proceedings, violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. They further alleged that such deprivations were caused by DSS's pattern, practice, custom, and policy of not training caseworkers with respect to the proper standards for emergency removals, with callous indifference to citizens' rights.

Thereafter, all of the defendants who were served in the action (hereinafter collectively the defendants) moved, inter alia, for leave to amend their answer to include the affirmative defense of qualified immunity. The plaintiffs cross-moved, inter alia, for summary judgment on the issue of liability. The Supreme Court granted that branch of the defendants' motion which was for leave to amend their answer, and denied that branch of the plaintiffs' cross motion which was for summary

judgment on the issue of liability, finding the existence of triable issues of fact. The plaintiffs appeal.

The Supreme Court providently exercised its discretion in permitting the defendants to amend their answer to assert the affirmative defense of qualified immunity (*see* CPLR 3025 [b]). State officials are entitled to qualified immunity under 42 USC § 1983 for discretionary functions if either (1) their conduct did not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe that their acts did not violate clearly established rights (*see Doe ex rel. Doe v Whelan*, 732 F3d 151, 155 [2d Cir 2013]; *Southerland v City of New York*, 680 F3d 127, 141 [2d Cir 2012]). A parent's right to not have a child removed and the child's concomitant right not to be removed "without court order, parental consent, or emergency circumstances was firmly established" in 2001 (*Southerland v City of New York*, 680 F3d at 160; *see Tenenbaum v Williams*, 193 F3d 581, 604-605 [2d Cir 1999]). Accordingly, qualified immunity is an appropriate defense if there was an objectively reasonable basis for the removal decision, such that " 'officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context' " (*Doe ex rel. Doe v Whelan*, 732 F3d at 155, quoting *Southerland v City of New York*, 680 F3d at 141; *see Tenenbaum v Williams*, 193 F3d at 596). Here, there was no prejudice or surprise to the plaintiffs, given that the basis for the removals was fully explored during discovery (*see* CPLR 3025 [b]; *Marcum, LLP v Silva*, 117 AD3d 917, 917 [2014]; *Bonavita v McNicholas*, 72 AD3d 859, 859 [2010]).

The Supreme Court also properly denied that branch of the plaintiffs' motion which was for summary judgment on the issue of liability. Although parents have a liberty interest in the care and custody of their children, and children have a parallel liberty interest in not being dislocated from their family (*see Santosky v Kramer*, 455 US 745, 753-754 [1982]; *Southerland v City of New York*, 680 F3d at 142), in emergency situations, where a child is at imminent risk of harm, the child may be removed from a parent's care without court authorization or parental consent (*see Southerland v City of New York*, 680 F3d at 149; *Tenenbaum v Williams*, 193 F3d at 594; *see also* Family Ct Act § 1024 [a]). Where emergency circumstances do not exist, a removal will violate the procedural due process rights of both parent and child (*see Southerland v City of New York*, 680 F3d at 142; *Tenenbaum v Williams*, 193 F3d at 600). Further, a plaintiff may have a viable procedural due process claim even where emergency circumstances existed at the time of removal,

if the plaintiff does not receive a prompt postdeprivation hearing (*see Southerland v City of New York*, 680 F3d at 151 n 22; *Gomes v Wood*, 451 F3d 1122, 1128 [10th Cir 2006]; *Kia P. v McIntyre*, 235 F3d 749, 760 [2d Cir 2000]). A removal in the absence of court authorization or emergency circumstances also violates the child's Fourth Amendment right to be free from unlawful seizures (*see Southerland v City of New York*, 680 F3d at 161; *Tenenbaum v Williams*, 193 F3d at 604-605).

" '[B]rief removals [of a child from a parent's home] generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal' " (*Southerland v City of New York*, 680 F3d at 153, quoting *Nicholson v Scoppetta*, 344 F3d 154, 172 [2d Cir 2003]). Moreover, once court confirmation of the basis for removal is obtained, any liability for the continuation of removal can no longer be attributed to the caseworker who removed the child. Thus, where a postremoval court order is promptly obtained, there is no substantive due process violation (*see Southerland v City of New York*, 680 F3d at 153). Here, the relevant time period was approximately five days from the time the two younger children were removed until the hearing was held; the oldest child was not removed until after the Family Court order remanding the children to the custody of DSS was issued.

The plaintiffs failed to demonstrate, as a matter of law, the absence of emergency circumstances when the two younger children were removed from their parents' care without court authorization (*see Kia P. v McIntyre*, 235 F3d at 760 n 4), nor did they show, as a matter of law, that the brief removals of those children prior to court authorization rose to the level of a substantive due process violation (*see Southerland v City of New York*, 680 F3d at 153-155). The plaintiffs further failed to demonstrate as a matter of law that they did not receive a prompt postdeprivation hearing (*see Kia P. v McIntyre*, 235 F3d at 761; *Cecere v City of New York*, 967 F2d 826, 830 [2d Cir 1992]; *see also* former Family Ct Act § 1026 [c], as effective prior to L 2005, ch 3, § 1, part A, § 14), or that a removal of the oldest child was actually effectuated prior to court order.

Moreover, the plaintiffs also failed to demonstrate that any constitutional violations were attributable to any policy on the part of the defendants of not training caseworkers on the proper standards for emergency removals of children, amounting to a deliberate indifference to their rights (*see Walker v City of New York*, 974 F2d 293, 297 [2d Cir 1992]; *Johnson v Kings County Dist. Attorney's Off.*, 308 AD2d 278, 294 [2003]).

Accordingly, since the plaintiffs failed to meet their prima facie burden of demonstrating the absence of triable issues of fact, the Supreme Court properly denied that branch of their cross motion which was for summary judgment on the issue of liability (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Balkin, J.P., Hall, Duffy and LaSalle, JJ., concur.